Judge Umderwood
delivered the opinion of the'Court.
TheRE are, in this record of 360 pages, few questions of law. The facts* so far as necessary *17 io bo stilted, are these. Lewis Craig having contracted fora parcel of land, called Kennedy’s bounty,, and having procured, by compromise, an interest in an entry and grant in the name of Evans, covering, the same land under the conveyances made to him, regarded himself, and seems to have been regarded by some others, as possessed of the legal title; for deeds were accepted from him under that belief. It, however, turned out, that owing to defects in the conveyances, this was not the case. Bagby, &c. hieing possessed of u part of the land claimed bv Craig, and holding, in virtue of an elder, adverse patent; Craig instituted a suit in 'chancery against them, for the purpose of asserting a superior equitable right, and to compel them to relinquish the legal title.
During the progress of this suit, John and Whitfield, sons of Lewis Craig, petitioned- and were admitted as parties and co-complainants with their father. The reasons stated for this proceeding were, that said John and Whitfield, as sureties for said Lewis, to secure the payment of the purchase money for the land called Kennedy’s bounty, had been compelled to pay “the same, or a great .portion;''’ that Lewis Craig, while he believed he held the legal title, had conveyed the land to them, to “make them safe as to such securityship, and various other moneys paid by them for him;” that discovering his, L. Craig’s title to be defective, he had caused others to convey to his sons, with a view to perfect the title in them, and therefore, said John and Whitfield were made parties, to take the title in case it should be recovered of the defendants.
The complainants in this suit did succeed, and by it, John and Whitfield Craig recovered from the defendants 723 acres, by a decree of the Nicholas circuit court, rendered in June, 1813. On the 5th of January, 1807, before Lewis Craig had made any conveyance of his title to his sons, he and Vincent Calvin executed an obligation to William Penick, the complainant in the circuit court, for the conveyance of 50 acres of land. On the 17th July, 1815, John Craig sold to William Penick his undivided moiety ‘ *18 of the lf\nd recovered by him and Whitfield Craigs by the decree of the Nicholas circuit court, at twelve dollars per acre. It was, however, stipulated that the quantity of Penick’s purchase from John Craig, should not exceed 228 acres. The amount to be paid lor the SO acres, sold by Calvin and Lewis Craig, to Penick, was six dollars per acre or $>300, of which ‡100 had been paid to said Lewis, $100 to John Craig,and ‡100 remained unpaid; and this, by an agreement filed, signed by John Craig, Whitfield Craig and Wrn. Penick, was stated to be “coming to Whitfield Craig.?’ The agreement bears date 22d. February, 1826, and is made evidence in the causes
By an agreement of the same date, between John Craig and Penick, it is admitted that Penick had paid $1,986, on account of his purchase from John Craig.
In 1819, Penick filed his bill against the Craigs, fbr the purpose of procuring a title for the 50 acres Sold him by Lewis Craig and Calvin, and for the tnoiety sold him by John Craig, and also to have a division of the land between himself, as John Craig’s vendee, and Whitfield Craig, the owner of the other inoiety. Whitfield Craig resisted a conveyance of the 50 acres, upon the ground that the equity which he had and derived from his father, was older and paramount to that relied on by the complainant. In support of the equity thus asserted, he exhibits a contract of his father’s, dated 5th November, 1804, stipulating to convey 3930 acres, (Kennedy’s bounty) to his sureties, Tureman, Chiles and his sons John and Whitfield Craig, in case he failed to pay the pur-5 chase money, and they had to pay it. The purchase amounted to £1,000, and the evidence conduces to uhow that it was all paid by the sureties, and that Tureman and Chiles were indemnified by John and 'Whitfield Craig.' Other sums are spoken of as having been paid by John and Whitfield Craig, for their father, but how much, and for what, does not appear.
Supposing Whitfield paid half the £1,000 and interest, ana John paid the other half, we do not hesitate, from the testimony, to say that they were amply indemnified by the land conveyed to them, without tdkingthe 50 actfes sold by their father and *19 Calvin to Penick, for that purpose. The pvoof is, that the land, as far back as 1808,. was wo'rth from six to ten dollars per acre, taking the whole 3,930 acres, estimating the title to be good; and that in 1822, it was worth from fifteen to twenty dollar's per acre; The title must be taken to be good, at least to the extent of the 723 acres recovered, and from the fact that Craig’s claim succeeded against an elder patent, we think it fair to presume that much of the land/not litigated in that'controversy, will be secured. But if it should not be, the indemnity is still* ample, for we cannot regard any sums which John and Whitfield-, Craig may have paid for their father, except the á¿l,0Ó0 above, no other appearing to have been paid-by the proof. It satisfactorily results, from these facts, that Penick should be protected in his right to the 50 acres, the object of Lewis Craig’s contract of 1804, in behalf of his sureties, being fulfilled, without requiring this 50 acres to do it, and the sale of this 50 acres having been made to Penick, before John and Whitfield Craig had any title. We perceive no error, therefore, in the decree of the circuit court, in directing a conveyance of these 50 acres to the complainant, Penick.'
Person entitled to money and resisting reception thereof, has no right to interest thereon.
Nor is there any error in the decree, in respect to the responsibility to be imposed on Whitfield Craig, by the conveyance required of him, or in the failure to decree interest on the $100 directed to be paid said Whitfield. By the agreement already noticed, Whitfield Craig assented to receive the remaining $100 due for this 50 acres. We presume it was understood that this part of the agreement depended upon whether the court should decree a conveyance of the title by John and Whitfield Craig, to the complainant. The court having so decreed, it was proper to direct the payment of the $100 to Whitfield Craig, and that the conveyance should be made on the payment of the money, without interest, for it would seem that $100, at the date , of the'agreement in 1826, was all that was claimed, ahd the court pro:-perly remark in their decree, as a reason for not allowing interest,, that Whitfield Craig resisted the reception of the money. Whitfield Craig, having assented to receive the $100-in case the decree di *20 reeled him to conve3r, for the stipulation in the agree-nient, that it was “corning to him,” surely means he will take it also, and having so far placed himself in his father’s shoes, ought, likewise, to return the monejr in case the land was lost, or taken by a paramount claim. Coming in under his father, to get the money', he ought not to be let in to receive, without taking Upon himself the same obligation to return it, which his father was under. The decree imposes no more,, upon him, than a liability to refund at the rate of six dollars per acre, to the amount of §100, and he is not liable for more than the §100, in case all the 50 acres should be taken by a paramount claim. 'This is a responsibility correspondent to the advantage he derives by claiming under his father, and it is equitable to impose it. There is no evidence sustaining Whitfield Craig’s exceptions to the report.
The next question arises upon the division made, and the principles which governed the court, in making the division. Benjamin Kirk, was made a party to the suit by an amendatory bill, lie, asserting claim to a part of the land, recovered by the- Craigs in the Nicholas circuit court,, as a purchaser under John Craig.
The court in the progress of the cause, by the consent of parties, ordered the surveyor to go upon the land in controversy, and to lay down the whole quantity recovered by the decree in the Nicholas circuit court, and then to, lay down all, and every part and por-lion thereof, which had been sold by either John, Whit-held or Lewis Craig, to any person before the institution of this suit. Accordinglo the surveyor’s report, out of the 723 acres, recovered by the decree of the Nicholas circuit court, 261 acres were sold by the sheriff under execution, arid Marshall Key purchased it; 7 acres and a fraction were sold by Lewis Craig, to Benjamin Kirk, and was possessed at the date of the survey by Richard Kirk; 11 acres and a fraction were in possession of Thomas Key; but under whom lie derived title is not stated by the surveyor; so also of 2 acres-and a fraction possessed by Richard Kirk; 98 acres and a fraction poss'essed by Paschal M’Glass.on; 53 acres and a fraction possessed by the com *21 plainant, being the land embraced bj the bond from Lewis Craig, and Calvin to the complainant; 3 acres and a fraction in possession of Nathan Sidwall. All these quantities added, and their amount, deducted from the 723 acres leaves 285 acres and a fraction as the quantity, which the court divided between the complainant, as'John Craig’s vendee and Whitfield Craig. Upon a more accurate admeasurement made by the commissioners, appointed to make the division, the 235 acres, proved to be only 280, of which 139 were assigned to the complainant, and 141 to Whitfield Craig.
Purchaser, with notice of prior sale, to another, of same land, must surrender to prior vendee.
Witn this division both parties are dissatisfied, and both assign error.- impeaching it. The complainant in the division wishes to charge Whitfield Craig with the whole 26'1 acres, lor the purpose of enlarging John Craig’s interest. Bui Riis was not allowed by the court, and we think properly upon two grounds. 1st. It is proved tout this land was sold under execution, against Lewis Craig and securities, in favor of Marshall, if the land was not exclusively the property of Whitfield Craig, before tins time it was appropriated as Lewis Craig’s land, and if that were the case, it would not prevent Whitfield Craig, under the decree of the Nicholas circuit court, from claiming half the residue. 2d. If the land when sold by the sheriff was the separate property of Whitfield Craig, it was so fully, in equity at least, without the aid of the decree of the Nicholas circuit court. That decree, which compelled the surrender of the elder adverse title, ought not to have the effect of changing the preexisting rights of John and Whitfield Craig. In either point of view, we dp not perceive the equity of making Whitfield account for these 261 acres, in the division so as to lessen his share in the residue.
As Benjamin Kirk claims a part of these 261 acres, the next question is, did he bargain for it, subsequent to Penick? The evidence is not strong enough to shew it, against the positive answer of Kirk, the bond exhibited by him and his proof. If Kirk made his contract with John Craig, for these 261 acres,, knowing at the time, that Craig had sold the same land to Penick, he ought to be compelled to surrender to *22 Penick. As it is, the bill was properly dismissed'as to Kirk. In relation to the other individuals, who-were possessed of parts-of the 723 acres, they were not made defendants, and therefore, it was not proper to make any order or decree, relative to their lauds,, which might operate upon their interests. But we are inclined to the opinion from what appears in the cause, that it would have been useless to have made the other persons holding parts of the 723 acres, defendants, as their claims would probably be protected-as purchasers under Lewis Craig. Deducting the quantity of acres thus held, fay persons not parties, and the 261 acres already disposed of, and.the court have assumed the proper quantity, to be divided between the complainant, and. Whitfield Craig.. If John, and Whitfield Craig, yet retain an interest in any, lands, held by persons, not parties to this suit, and. which would be embraced by the complainant’s contract; he may yet have remedy by bringing the proper parties before the court, unless he be stopped by this suit. If he should be, it is hisown fault,,and whether he is or is not, it is not our province to advise.
Sanders, for Craig; Reid, for Penick,
No error has been assigned touching the excess of Penick’s payment over the land he gets.
The decree of the circuit court is affirmed.
The appellant must pay the costs of his appeal, and the plaintiff in error must pay the costs of his writ of error.